```
          IN THE UNITED STATES DISTRICT COURT FOR
        THE DISTRICT OF MARYLAND, NORTHERN DIVISION
```

|  |  |  |
|---|---|---|
| STEPHEN B. EIGLES, | * | |
| Plaintiff, | * | |
| v. | * | CIVIL NO.: WDQ-07-2223 |
| JONG KOOK KIM, *et al.*, | * | |
| Defendants. | * | |
|  | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Stephen B. Eigles sued various parties[1] associated with a radiology business for breach of contract and related claims. For the following reasons, the defendants' motions to dismiss for lack of jurisdiction will be denied.

I.  Background[2]

On January 1, 2004, Eigles began working as a radiologist for Pro Radiology in Cumberland, Maryland. 3d Am. Compl. ¶¶ 1, 17. On January 1, 2006, Jong Kook Kim and Myung-Sup Kim (the

---

[1] Jong Kook Kim; Myung-Sup Kim; J. Kim Radiology Associates, P.A. d/b/a Pro Radiology, P.A. ("Pro Radiology"); Myung-Sup Kim, M.D., P.A. ("M.S. Kim, P.A."); A.D.R., L.L.C. d/b/a Advanced Diagnostic Radiology ("A.D.R."); U.S. Mobile Imaging, L.L.C. ("U.S. Mobile"); Frank G. Gerwig ("Gerwig"); Frank G. Gerwig & Associates, P.A. ("F.G.A., P.A."); and Tri-State Management ("Tri-State"). 3d Am. Compl. ¶ 1.

[2] For the defendants' motions to dismiss, the well-pled allegations in Eigles's complaint are accepted as true. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

"Kims") and Eigles formed a partnership that owned and operated A.D.R.; Pro Radiology; M.S. Kim, P.A.; Western Maryland PET Imaging, L.L.C.; and U.S. Mobile. 3d Am. Compl. ¶ 48. Eigles invested "hundreds of thousands of dollars" for a one-third interest in the partnership. *Id.* ¶¶ 47-48. In 2007, Eigles discovered that the Kims and their accounting services[3] had engaged in misrepresentations and other financial improprieties. *See id.* ¶¶ 42, 62.

On April 5, 2007, Eigles and his family began staying at a Florida hotel. Eigles Decl. ¶ 10. Eigles and his wife, Natasha Xiaomu Li, sought to "establish residency" in Florida because it has no income tax. ECF No. 157, Ex. A-3; Eigles Decl. ¶ 8.[4] On April 13, 2007, Eigles resigned from Pro Radiology and terminated his partnership interest. *See id.* ¶¶ 62, 64.

---

[3] Gerwig; F.G.A., P.A.; and Tri-State. 3d Am. Compl. ¶ 42.

[4] In May 2007, Eigles and his wife listed their Maryland home for sale, returned their Maryland car tags, and sent their personal belongings to relatives in Virginia. *Id*. ¶ 16; ECF No. 157, Exs. A-6, -8. In April and May 2007, Eigles looked for permanent housing in Florida, obtained a Florida post office box and driver's license, interviewed with a Florida radiology practice, applied for a Florida medical license (received August 9, 2007), and registered to vote in Florida. Eigles Decl. ¶¶ 10-12, 19; ECF No. 157, Exs. A-9-10, -15, -21. Eigles listed his Florida post office box as his address on his federal and Maryland tax returns. *Id.*, Ex. A-30.

Since April 2007, Eigles has returned to Maryland only to sell his house, visit his parents, and attend this case's proceedings. Eigles Decl. ¶ 20. He neither owns Maryland real or personal property, nor does he maintain an address here. *Id.*

2

In an April 25, 2007 e-mail, Eigles told Dr. Sanjay Jain that he was "applying for new state licenses" and "planning on doing telerad[iology] from China." ECF No. 148, Ex. 2. Eigles noted he would send his "permanent contact info[rmation]" soon, and invited Dr. Jain to "come visit." *Id*. In a May 18, 2007 mass e-mail containing "new permanent contact info[rmation]," Eigles explained that he and his family were "moving to China," and their mailing address was their Florida post office box. *Id.*, Ex. 3.[5]

On May 24, 2007, Eigles and his family went to China on 30-day tourist visas. *Id.* ¶ 27; ECF No. 157, Ex. A-16.[6] In a May 30, 2007 e-mail, Eigles--now in China--asked Dr. David Isaacs to "look [Eigles] up" if given the "chance to come to China in the next few years." *Id.*, Ex. 6. That month, Eigles asked a colleague for a recommendation letter "to use in obtaining future employment in China" to "practice radiology" there. Brieloff Decl. ¶ 4.

---

[5] The e-mail also listed e-mail addresses and United States telephone numbers. *Id.*, Ex. 3.

[6] A tourist visa is for "an alien who comes to China for sightseeing or visiting family members or friends or for other personal affairs." Embassy of the People's Republic of China in the United States of America, Tourist Visa (L Visa), http://www.china-embassy.org/eng/hzqz/zgqz/t84246.htm (last updated Apr. 23, 2009).

On June 5, 2007, Eigles and his family booked a November 17, 2007 flight to the United States via Washington, D.C. ECF No. 157, Ex. A-32. In a June 6, 2007 e-mail, Eigles told Dr. Jain that he had "been busy selling [his family's] house, car, applying for licenses, and wrapping up all [his family's] business in the U[nited] S[tates]." ECF No. 148, Ex. 4. Eigles noted that he was "trying to decide where to settle, rent a house, and set up an office." *Id*.[7] That day, Eigles renewed his tourist visa. Eigles Decl. ¶ 29; ECF No. 157, Ex. A-18. In a June 30, 2007 e-mail, he invited Dr. Isaacs to visit his five-bedroom, two-story apartment in Qingdao, China, ECF No. 148, Ex. 5, which was on a "short-term lease" and "more spacious and cheaper than a hotel," Eigles Decl. ¶ 32. In a July 4, 2007 e-mail, Eigles asked Dr. Isaacs for a reference for "when [Eigles would] come back to the U[nited] S[tates] th[at f]all." ECF No. 163, Ex. 3; ECF No. 164. In an August 16, 2007 e-mail, Eigles told Dr. Jain that "Qingdao is a nice place to live, [but] there isn't much here for tourists." ECF No. 148, Ex. 9.

On August 21, 2007, Eigles sued the Kims, Pro Radiology, F.G.A., P.A., and Tri-State for breach of contract and related claims. Compl. ¶ 1. He added the remaining defendants on June

---

[7] Eigles asserts that he meant leaving Maryland, finding a Florida house, and setting up a "home" office to use his computer. Eigles Decl. ¶ 31.

4

12, 2008[8] and December 16, 2009.[9]  All the defendants are Maryland citizens.  *See* 3d Am. Compl. ¶¶ 6-15.

In September and October 2007, Eigles renewed his China tourist visa.  Eigles Decl. ¶ 29; ECF No. 157, Ex. A-18.

On October 17, 2007, the Kims and Pro Radiology moved to dismiss for, *inter alia*, lack of diversity jurisdiction, alleging that Eigles had either remained a Maryland citizen or had moved to China.  ECF No. 22 at 5-7.  On March 1, 2008, Judge Andre M. Davis denied that motion because Eigles had obtained a Florida driver's license and registered to vote there, had received Florida work credentials, and was "actively investigating the real estate market during his stay in China."  ECF No. 31 at 3.[10]

On November 17, 2007, Eigles returned to the United States via Washington, D.C.  Eigles Decl. ¶ 39;[11] ECF No. 157, Ex. A-25.  That month, Eigles's wife received a job offer in China.  Eigles Decl. ¶ 40.  On November 19, 2007, Eigles received a "Z Visa," which is for "an alien [Eigles's wife] who comes to China for .

---

[8] M.S. Kim, P.A.; A.D.R.; and U.S. Mobile.  ECF No. 33 ¶ 8; ECF No. 38.

[9] Gerwig.  ECF No. 108 ¶ 7; ECF No. 120.

[10] On May 20, 2009, this case was re-assigned to this Judge.

[11] Although Eigles's declaration states "November 17, 2009," his unopposed "motion to amend/correct" that "typographical error" by replacing it with "November 17, 2007" will be granted.  *See* ECF No. 159 at 1-2.

5

. . employment" and "her . . . accompanying family member [Eigles]."[12] A Z Visa, which is valid for three months, requires the holder to apply for residence status within 30 days of entry. Z Visa, *supra*.

On January 8 and December 31, 2008, Eigles obtained Chinese Residence Permits, allowing him to stay in China as his wife's dependent until December 31, 2009. ECF No. 157, Ex. A-28. Eigles neither applied for a work permit nor sought permanent residency in China. Eigles Decl. ¶ 49. Eigles and his family stayed "with relatives, friends, in hotels, and in . . . short-term rental[s]." *Id.* ¶ 32.

On May 29, 2008, Eigles and his wife bought Florida real property. Eigles Decl. ¶ 45.[13] On June 17, 2008, Eigles requested a Florida absentee ballot. ECF No. 157, Ex. A-29.

On August 12, 2009, Eigles and his family settled in Florida. Eigles Decl. ¶ 48.

On May 18 and 27, 2010, the defendants again moved to dismiss for lack of jurisdiction. ECF Nos. 148, 156.[14] On June

---

[12] ECF No. 157, Ex. A-26; Embassy of the People's Republic of China in the United States of America, Employment/Work (Z) Visa, http://www.china-embassy.org/eng/hzqz/zgqz/t84245.htm (last updated Sept. 19, 2008) [hereinafter "Z Visa"].

[13] Eigles notes only the street address. *See* Eigles Decl. ¶ 45.

[14] The Court will grant the motion of Gerwig, F.G.A., P.A., and Tri-State to "join and adopt" the motion to dismiss of A.D.R., Pro Radiology, the Kims, M.S. Kim, P.A., and U.S. Mobile. ECF

4 and 14, 2010, Eigles opposed those motions. ECF Nos. 157, 158. On June 21, 2010, A.D.R., Pro Radiology, the Kims, M.S. Kim, P.A., and U.S. Mobile filed their reply. ECF No. 160. On October 29, 2010, Eigles filed a surreply. ECF No. 163.

II. Analysis

  A. Standard of Review

Under Fed. R. Civ. P. 12(b)(1), the plaintiff bears the burden of proving subject matter jurisdiction. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). In determining whether it has jurisdiction, the Court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* The motion to dismiss should be granted only if the "material jurisdictional facts are not in dispute" and the "moving party is entitled to prevail as a matter of law." *Id.*

  B. The Defendants' Motions to Dismiss

Eigles invokes the Court's diversity jurisdiction by asserting that when he sued, he was a Florida citizen and the defendants were Maryland citizens. Compl. ¶¶ 4, 9; *see also* 3d Am. Compl. ¶ 5.

---

No. 156; *see* Fed. R. Civ. P. 10(c) ("A statement in a pleading may be adopted by reference . . . in any other pleading or motion.").

1. Diversity Jurisdiction

Under 28 U.S.C. § 1332, diversity jurisdiction exists between "citizens" of different states at the time the complaint is filed. *Athena Automotive, Inc. v. DiGregorio*, 166 F.3d 288, 290 (4th Cir. 1999). To be a "citizen" of a state, one must be a United States citizen domiciled there. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989). A United States citizen who has no state domicile is "stateless" and cannot invoke diversity jurisdiction. *Id.*

Domicile is established by "physical presence in a place" and the "intent to remain there." *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989). A party's "[d]omicile is not destroyed by mere absence" from the state if he "intends to return." *See Dyer v. Robinson*, 853 F. Supp. 169, 172 (D. Md. 1994); *Sadat v. Mertes*, 615 F.2d 1176, 1181 (7th Cir. 1980).

Because domicile is determined on a "case by case basis," courts consider, *inter alia*, voter registration, mailing address, place of employment, bank accounts, driver's licenses, and tax payments.[15] Although not conclusive, "declarations of intent by the person whose domicile is in question are given

---

[15] 3 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3612 (3d ed. 2010); *Mecklenburg Cnty. v. Time Warner Entm't-Advance/Newhouse P'ship*, No. 3:05cv333, 2010 WL 391279, at *5 (W.D.N.C. Jan. 26, 2010).

heavy . . . weight." *Thomas v. Farmer*, 148 F. Supp. 2d 593, 596 (D. Md. 2001).

Courts presume the continuation of an existing domicile. *See Dyer*, 853 F. Supp. at 173. A party asserting diversity based on a *change* of his domicile must prove that change by "clear and convincing" evidence. *Id*. He must show he (1) "change[d his] residence," and (2) intends to remain there "indefinitely." *Id.* at 172. A party's motive for changing his domicile is irrelevant as long as he intended the change. Restatement (Second) of Conflict of Laws § 18 cmt. f (1971).

2. The Defendants' Arguments

In moving to dismiss, the defendants assert that Eigles was domiciled in China instead of Florida when he sued, and was, thus, "stateless." *See* ECF No. 148 at 1, 6, 14. They argue that Eigles obtained a Florida driver's license and registered to vote in Florida only because he sought tax benefits, and he rented a spacious apartment in China in June 2007. *See id*. at 12-13, Ex. 5; Eigles Decl. ¶ 8. They cite Eigles's statements-- before he sued on August 21, 2007--that he was "wrapping up all [his family's] business" in the United States while deciding "where to settle, rent a house, and set up an office," and that his colleagues should: (1) "look [him] up" if given the "chance to come to China in the next few years"; and (2) write him a

9

recommendation for "future employment in China."  ECF No. 148, Exs. 4, 6; Brieloff Decl. ¶ 4.

The defendants also assert that after Eigles sued, he received a longer-term Chinese Z Visa on November 19, 2007, obtained permanent Chinese Resident Permits on January 8 and December 31, 2008, and did not return permanently to Florida until August 12, 2009.  *See* ECF No. 148 at 11-12, 17; ECF No. 157, Exs. A-26, -28.

3. Eigles Changed His Domicile from Maryland to Florida

After April 2007, Eigles's only contact with Maryland was to sell his house, return his Maryland car tags, visit his parents, and attend this case's proceedings.  Eigles Decl. ¶¶ 15-16, 20.  Eigles "inten[ded to] abandon his former domicile," Maryland.  *Hamlin v. Holland*, 256 F. Supp. 25, 27 (E.D. Pa. 1966).[16]

The question is whether there is "clear and convincing" evidence that Eigles intended to change his domicile to Florida. *Dyer*, 853 F. Supp. at 173.[17]  Before filing his August 21, 2007

---

[16] *See Hamlin*, 256 F. Supp. at 26 (defendant had not abandoned his Pennsylvania domicile for Florida because he had only "vacation[ed]" in Florida for two months before returning to Pennsylvania).

[17] Eigles's bank records contained in ECF No. 157, Ex. A-11, will not be considered; they should have been disclosed when the defendants requested documents "concerning any contacts [Eigles has] had with the State of Florida since January 1, 2006, including . . . property, accounts, [and] tax filings."  *See* ECF

10

complaint, Eigles and his family began staying at a Florida hotel as he considered buying Florida real estate. Eigles Decl. ¶¶ 10-12. Eigles applied for a Florida radiology job and a Florida medical license, revealing his "settled intent to practice [medicine] in Florida." Eigles Decl. ¶ 12; ECF No. 157, Ex. A-21.[18] He obtained a Florida driver's license,[19] and registered to vote in Florida.[20] He told friends and family that his "permanent" mailing address was a Florida post office box.[21] That he moved to Florida to "avoid taxation" is "immaterial" to

---

No. 160, Ex. 6 ¶ 11 (defendants' "First Request for Production of Documents"); Fed. R. Civ. P. 37(c)(1) (prohibiting a party from "supply[ing] evidence on a motion" that he previously "fail[ed] to disclose"); *McCray v. Peachey*, No. 06-2794, 2007 WL 3274872, at *3 (E.D. La. Nov. 6, 2007) ("[Parties] cannot rely upon documents not disclosed in response to discovery.").

[18] *See Garcia Perez v. Santaella*, 364 F.3d 348, 353 (1st Cir. 2004) (plaintiff's domicile was Florida after "studying for and passing the Florida bar exam" and "explor[ing] job opportunities" there).

[19] ECF No. 157, Ex. A-9; *see, e.g.*, *Syme v. Rowton*, 555 F. Supp. 33, 36 (D. Mont. 1982) (considering, *inter alia*, defendant's Texas driver's license when determining he was domiciled in Texas).

[20] ECF No. 157, Ex. A-10; *see, e.g.*, *Goode v. Sts Loan & Mgmt., Inc.*, No. DKC 2004-0999, 2005 WL 106492, at *7 (D. Md. 2005) (voter registration in a state raises a presumption of domicile (citation omitted)).

[21] ECF No. 148, Ex. 3; *see, e.g.*, *T. P. Labs., Inc. v. Huge*, 197 F. Supp. 860, 864 (D. Md. 1961) (defendant's Wisconsin post office box indicated his intent to change his domicile to that state).

determining domicile. Restatement, *supra*, § 18 cmt. f; ECF No. 148, Ex. 16.

When he filed suit, Eigles was domiciled in Florida.

4. Eigles Intended to Return to Florida from China

Although Eigles stayed in China on short-term visas starting in May 2007 before filing his August 21, 2007 complaint, he did not "exhibit[] a clear intent to remain there."[22] His May 2007 requests to (1) find him in China--a "nice place to live"-- within the "next few years,"[23] and (2) write him a recommendation for "future employment" there,[24] do not indicate an "intention of [n]ever returning to the United States."[25] In June 2007, Eigles booked a November 2007 flight to the United States, ECF No. 157, Ex. A-32, and in July 2007 asked a colleague for a "reference . . . for when [Eigles would] come back to the U[nited] S[tates] th[at f]all," ECF No. 163, Ex. 3. Eigles never applied for a work permit in China. Eigles Decl. ¶ 49. His Florida

---

[22] *Segen v. Buchanan Gen. Hosp.*, 552 F. Supp. 2d 579, 583 (W.D. Va. 2007) (plaintiff was domiciled in England because he had "lived and worked continuously" there for nine months before suing).

[23] ECF No. 148, Exs. 6, 9.

[24] Brieloff Decl. ¶ 4.

[25] *Pemberton v. Colonna*, 189 F. Supp. 430, 431–32 (E.D. Pa. 1960) (plaintiff was domiciled in Mexico because her only tie to the United States was real estate that would ultimately be sold).

12

"[d]omicile [was] not destroyed by mere absence" from there. *Dyer*, 853 F. Supp. at 172.

Regarding Eigles's June 2007 statement that he was "wrapping up all [his family's] business" in the United States while deciding "where to settle, rent a house, and set up an office," ECF No. 148, Ex. 4, Eigles asserts that he meant leaving Maryland, finding a Florida house, and setting up a "home" office to use his computer, Eigles Decl. ¶ 31. He explains that his China apartment had been on a "short-term lease," *id.* ¶ 32, and that from April 2007, he has intended to be a Florida "domiciliary . . . and citizen," *id.* ¶ 49. These declarations are given "heavy weight." *Farmer*, 148 F. Supp. 2d at 596.

That Eigles received a longer-term Z Visa in November 2007 and Chinese Resident Permits in 2008 because of his wife's job is irrelevant; jurisdiction is determined when the complaint is filed. *Athena*, 166 F.3d at 290.

Because Eigles was domiciled in Florida and intended to return from China when he sued, the defendants' motions to dismiss must be denied.

III. Conclusion

For the reasons stated above, the defendants' motions to dismiss for lack of jurisdiction will be denied.

| | |
|---|---|
| 1/19/11 | _____/s/_____ |
| Date | William D. Quarles, Jr.<br>United States District Judge |